

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

**ORIGINAL**

JUL 14 2005

CLERK, U.S. DISTRICT COURT
By _____
          Deputy

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| DOROTHY BANKS, ET AL., | § | |
| | § | |
| Plaintiffs, | § | |
| **ORIGINAL** | § | **3-05CV1399-D** |
| v. | § | |
| | § | CIVIL ACTION NO.: _____ |
| BRISTOL MYERS SQUIBB COMPANY | § | 220990 |
| and JOHN DOE NOS. 1-5, | § | |
| Defendants. | § | |

---

## DEFENDANT BRISTOL-MYERS SQUIBB COMPANY'S NOTICE OF REMOVAL

TO:   The United States District Court for the Northern District of Texas, Dallas Division.

COMES NOW BRISTOL-MYERS SQUIBB COMPANY, Defendant in the above-entitled and numbered cause of action (hereinafter "Defendant BMS"), and files this notice of removal, hereby removing an action styled *Dorothy Banks, et al. v. Bristol-Myers Squibb Company and John Doe Nos. 1-5*, Cause No. 05-05984-G, in the 134th Judicial District Court of Dallas County, Texas to the United States District Court for the Northern District of Texas, Dallas Division, and would respectfully show the Court as follows:

### I.

On June 21, 2005, Plaintiffs commenced an action against Defendant BMS in the 134th Judicial District Court of Dallas County, Texas.  Copies of all process, pleadings, and orders in the state court action together with an index of matters filed, a list of all counsel of record and parties, and a certified copy of the docket sheet of the state court action are attached to this Notice as Exhibit "A" as required by 28 U.S.C. § 1446(a).

---

## II.

The above-described action is one in which this Court has original subject matter jurisdiction under the provisions of 28 U.S.C. § 1332 and is one which may be removed to this Court by Defendant BMS pursuant to the provisions of 28 U.S.C. § 1441(b), in that it is a civil action between citizens of different States, and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. Plaintiffs are all individuals who are citizens of the State of Texas. Defendant BMS is a Delaware corporation with its principal place of business in New York. Defendants John Doe Nos. 1-5 are fictitious defendants and must be ignored for purposes of determining diversity of citizenship. 28 U.S.C. § 1441(a). For these reasons, complete diversity of citizenship exists as required by 28 U.S.C. § 1441(b).

## III.

Moreover, the amount in controversy is more than $75,000, exclusive of interest and costs. This lawsuit relates to damages allegedly suffered by Plaintiffs as a result of having ingested a prescription drug, Serzone, manufactured by Defendant BMS. There are approximately 278 individuals named as Plaintiffs in the lawsuit. Each of them seeks damages for "serious and grievous personal injuries and harm," "economic loss, including loss of earnings and earnings capacity," "fair and reasonable expenses for necessary health care, attention, and services, incurred incidental and related expenses;" reimbursement of amounts paid for Serzone; a common fund for periodic future medical examinations (aka "medical monitoring"); punitive damages and attorneys fees. These allegations, which Defendant BMS denies in their entirety, place an amount exceeding $75,000 exclusive of interest and costs into controversy as to each Plaintiff. Moreover, based on information provided to defendant by plaintiffs before the filing of this action, some plaintiffs claim many times the required amount in controversy, alleging that they suffered liver failure and other serious liver related illness. Additionally, this Court has jurisdiction over any Plaintiff who fails to

satisfy the minimum amount-in-controversy requirement because at least one named Plaintiff has satisfied the amount-in-controversy requirement. *Exxon Mobil Corp. v. Allapattah Services, Inc.*, Nos. 04-70, 04-79, 2005 WL 1469477 (June 23, 2005).

## IV.

Upon filing of this notice of the removal of the cause, written notice of this filing is being given by Defendant BMS to the Plaintiffs and their counsel as is required by law. A copy of the Notice will be filed with the Clerk of the court in which this cause was originally filed.

## V.

This Notice of Removal is timely filed in accordance with 28 U.S.C. § 1446(b), in that it is filed within thirty (30) days after service of Plaintiffs' Original Petition, which was served on Defendant BMS on June 23, 2005, and this case has been on file less than one year.

## VI.

No consent to removal by co-defendants is necessary, as the only other defendants are fictitious. *Cf. Jernigan v. Ashland Oil, Inc.*, 989 F.2d 812, 815 (5th Cir.).

## VII.

Defendant Bristol-Myers Squibb Company demanded a jury in its Original Answer filed in the state court action on June 27 2005.

WHEREFORE, PREMISES CONSIDERED, Defendant Bristol-Myers Squibb Company prays that the above-styled action now pending against it in the 134th Judicial District Court of Dallas County, Texas be removed there from to this Honorable Court.

Respectfully submitted,

SEDGWICK, DETERT, MORAN & ARNOLD, L.L.P.

By: _____
   **Alan R. Vickery**
   State Bar No. 20571650
   **Todd E. Betanzos**
   State Bar No. 90001860
   **Katherine W. Binns**
   State Bar No. 24028223
   1717 Main Street, Suite 5400
   Dallas, Texas 75201
   (469) 227-8200
   (469) 227-8004 (facsimile)

**ATTORNEYS FOR DEFENDANT**
**BRISTOL-MYERS SQUIBB COMPANY**

## CERTIFICATE OF SERVICE

   I hereby certify that a true and correct copy of the foregoing Notice of Removal has been served on Plaintiffs' counsel as follows, via certified mail, return receipt requested, in accordance with the Federal Rules of Civil Procedure on this _14_ day of July 2005.

   Fred Hagans
   Hagans, Bobb & Burdine, P.C.
   3200 Travis, 4th Floor
   Houston, Texas 77006

   Ralph McBride
   Bracewell & Patterson, LLP
   711 Louisiana Street, Suite 2900
   Houston, Texas 77002

   Keith Grady
   Grady, Schneider & Newman, LLP
   801 Congress Avenue, 4th Floor
   Houston, Texas 77002

   _____
   ALAN R. VICKERY

RECYCLED

80000 SERIES
30% P C W

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

**ORIGINAL**

| | | |
|---|---|---|
| **DOROTHY BANKS, ET. AL.,** | § | |
| | § | |
| **Plaintiffs** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO.: _____** |
| | § | |
| **BRISTOL MYERS SQUIBB** | § | |
| **COMPANY, AND JOHN DOES** | § | |
| **NOS. 1-5** | § | |
| | § | |
| **Defendants.** | | |

## INDEX OF MATTERS BEING FILED

1.    Certified Copy of State Court Docket Sheet

2.    Plaintiffs' Original Petition  (6/21/05)

3.    Citation  (6/21/05)

4.    Service of Process (6/23/05)

5.    Defendant Bristol-Myers Squibb Company's Original Answer (6/27/05)

6.    Defendant Bristol-Myers Squibb Company's First Amended Answer (7/14/05)

7.    List of All Counsel

8.    List of All Parties

RECYCLED
80000 SERIES
30% PC W

| PLAINTIFF NAME | PLAINTIFF ATTORNEY | FILE DATE | CASE NO. |
|---|---|---|---|
| BANKS DOROTHY ETAL | MCBRIDE R | 6/21/05 | 05-05984-G |
| | 13332400 | | |

| DEFENDANT NAME | DEFENDANT ATTORNEY | TYPE OF CASE |
|---|---|---|
| BRISTOL-MEYER SQUIBB COMP | VICKERY A | DAMAGES |
| | 20571650 | |

| DISPOSITION | COST AGAINST | DATE | REFERENCE | JUDGEMENT AMT |
|---|---|---|---|---|
| | TRUST FUND BALANCE | STATUS | | |
| | | ACTIVE | | |

| PLAINTIFF NAME | PLAINTIFF ATTORNEY | | | | FILE DATE | CASE NO. |
|---|---|---|---|---|---|---|
| BANKS DOROTHY ETAL | MCBRIDE R | | | | 6/21/05 | 05-05984-G |

| TRANS DT | TRANS DESCRIPTION | REFRNCE | P/D | CD | NON-FEE | DEPOSITS | CHARGES |
|---|---|---|---|---|---|---|---|
| 6/21/05 | BRACEWELL & GIULIAN | 37529 | P | 10 | | 183.00 | |
| 6/21/05 | STATE INDIGENCE | | P | 12 | | | 10.00 |
| 6/21/05 | DC RECORDS MGT FEE | | P | 17 | | | 5.00 |
| 6/21/05 | SECURITY FEE | | P | 26 | | | 5.00 |
| 6/21/05 | RECORD MGT FEE | | P | 27 | | | 5.00 |
| 6/21/05 | CIT & COP  ATTY | | P | 31 | | | 8.00 |
| 6/21/05 | CLERKS FEE | | P | 31 | | | 50.00 |
| 6/21/05 | COURT RPT SVC FEE | | P | 33 | | | 15.00 |
| 6/21/05 | LAW LIBRARY FUND | | P | 36 | | | 15.00 |
| 6/21/05 | APPELLATE FUND | | P | 52 | | | 5.00 |
| 6/21/05 | STATE JUDICIAL FEE | | P | 53 | | | 40.00 |
| 6/21/05 | MEDIATION FUND | | P | 55 | | | 10.00 |
| 6/21/05 | FACILITY FEE | | P | 60 | | | 15.00 |
| 6/24/05 | RET CIT PPS | | P | 51 | | | |
| 6/24/05 | RET CIT PAID | | P | 59 | | | |
| 6/27/05 | SEDGWICK | 38381 | D | 10 | | 30.00 | |
| 6/27/05 | ENT JURY DEMAND | J22/051 | D | 31 | | | |
| 6/27/05 | ORIG ANS-BRISTOL | 01 | D | 31 | | | |
| 6/27/05 | ATTY-VICKERY ALAN R | 02 | D | 31 | | | |
| 6/27/05 | JURY DEMAND | | D | 34 | | | 30.00 |

***** CASE TOTALS *****

TOTAL GROSS CASE COSTS          213.00     NON-FEE ACCTS.                .00

                                           COUNTY DEPOSITS           213.00

                                           COUNTY CHARGES            213.00

                CASE BALANCE                    .00

¢CT10 3



RECYCLED ♻
8000D SERIES
30% P C W



CAUSE NO. _____



FILED
2005 JUN 21
JIM HAMLIN
DISTRICT CLERK
DALLAS CO., TEXAS
_____ DEPUTY

| DOROTHY BANKS, ET. AL. | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | DALLAS COUNTY, TEXAS |
| | § | |
| BRISTOL-MYERS SQUIBB COMPANY, | § | |
| AND JOHN DOES NOS. 1-5 | § | G-134th |
| | § | |
| Defendants. | § | _____ JUDICIAL DISTRICT |

## PLAINTIFFS' ORIGINAL PETITION

Plaintiffs **DOROTHY BANKS, ET. AL.** bring this action against **BRISTOL-MYERS SQUIBB COMPANY** and **JOHN DOE NOS. 1-5** ("Defendants"). Plaintiffs would show the Court as follows:

### I.
### DISCOVERY CONTROL PLAN

1.      Discovery should be conducted in accordance with a tailored discovery control plan under Texas Rule of Civil Procedure 190.4 (Level 3). Plaintiffs request the Court to enter a Level 3 Scheduling Order commensurate with the complexities of this case.

### II.
### PARTIES AND SERVICE

2.      Plaintiff, **DOROTHY BANKS**, is a resident of Dallas County, Texas.

3.      Plaintiffs, **KERRY AIKMAN, JULIA ALEXANDER, ROBERT ALEXANDER, ROBERTA ALLEN** as next friend of **JEFFREY A. ALLEN, CONNIE ANDERSON, ROBERT ANDERSON, SHARON B. ARRIZOLA, STEVE ASHBROOK, FAYE E. ATCHLEY, MARISEA BAGSBY** as next friend of **FRANCINE BAGSBY, ROBERT BAILEY, JENNY BALTZELL, RONALD E. BARNES, TIFFANY H. BARNES, ROBERT BEAUCHAMP, JENNIFER BEMAN, WENDY BENTZ, PATRISHA BERGER, SETH OKINE BETTRIDGE, LADEANA BIDDLE, CARLA BLAKE, LAURIE BAUER** as next friend of **CELESTE JEAN BLANCHETTE, DARLA BORGHEE, TRAVIS BOSLEY, STEVEN BOSTICK, PAULA L. BROCK,**

HOUSTON\1567096.3

EDITH BROOKS, LAURA ELIZABETH BROOKS, TINA HILL as next friend of CAROLYN BROWN, CHARLIE S. BROWN, CLEOLA SUSAN BROWN, TERRY BROWN, TIM BROWN, JOE T. BUDZISZ, DEBORAH BUTLER, LISA CAIN as next friend of JACQUELYN RENEA CAIN, GREG CANTERBERRY, KATHLEEN CARTER, KENNETH B. CARY, REBECCA SUE CASE, SAMUEL CASTILLO, JO CHAMBERS, DIANA CHANEY as next friend of GARY R. CHANEY, TOM CHANEY, MARIE CHARLESWORTH, RICKY L. CHRISTOPHER, KENNETH COBB, DENETT COCHRAN, JANIE COFFMAN, ANTHONY COKER, HOLLY COLLINS, ELIZABETH COMEAUX, DARLINE CONGER, DEIDRE L. COOLING, ROBERT D. COPELAND, COLLETTE CORBIN, MARY T. COTRUFO, DONNA G. CUNNINGHAM, DANNY M. CURBO, SONYA JACKSON CURREY, LYNDA CURTIS, CASSANDRA DANN, JANICE DAVIS, KAREN DENISE DAY, WENDY E. DECKER, JOANN DELANEY, PATRICIA DEVORE, GORDON DEWESS, SISSY DOBBS as next friend of MOIRA DOBBS, GLORIA J. DOSSETT, DEE ANN DRAKE, ZULEMA DUBROW, A.D. DUKE, TAWANA DYKE, GREG ENCEL, ELLEN HUTTON ENGELKE, SHERRY L. ERICKSON, RONA EUTSEY, ANDRE LAMONT EVANS, BILLIE LEE EVANS, LINDA SUE EVANS, PATRICIA STREET EVITT, CONNIE FARMER, STEPHEN JOSEPH FARRELL, REBECCA C. FAUGHT, JAMES FERGUSON, CYNTHIA FITZGERALD, RANDY FONDREN, ELONDA FORTUNE, TAMSIE FOSTER, TINA FOWLER, GINGER FOX, PATRICIA ANN FRANKLIN, KIRK FREEMAN, BARBARA JEAN FULLER, GLEN GARNER, JUANITA H. GARREANS, CLAYTON DEAN GAUSNELL, TINA R. GILL, JENNIFER WYNETTE MICHELLE GLEASON, CATHY GOEN as next friend of JEFFERY RODNEY GOEN, BRENDA GONZALEZ, DARRELL GLEN GORDON, TAMMY LYNN GRADY-LEVERITT, RICHARD GREG, ERIC A. GRICH-BEGLAN, JOSHUA AARON LOYD HALL, JAMES HALLUMS, GAIL HARRIS, MARSHA HARRIS, LORI HATFIELD, MARY HAYNES, SHERI HEAD, ANGELIQUE HENDERSON, BILL A. HICKS, ERIC W. HODGE, MARK D. HOLT, NICOLE HORN, JEFFERY W. HOWARD, RICKY L. HUNT, JON CHRISTOPHER HURLEY, JENNIFER IHRIG, NICOLE LEE IRVIN, JASON A. IRWIN, JASON ALLEN JACK, REBECCA JACKSON, TRACY

JACKSON, LISA EVELYN JOHNSON, REBECCA LYNN JOHNSON, AARON JONES, DEBRA JONES, DIANA JONES, DONNA JONES, JAMES JONES, MARK JONES, KATHLEEN MARIE KARTAK-MANOFF, ASHLEY MAERIE KEEN, SHEILA KEENAN, TRACY KING, JOHN KIRBY, ILAYNA KOOTZ, ELIZABETH AND CAROLYN KRIEBEL as next friend of DOUGLAS M. KRIEBEL, MICHAEL KROHN, JEFF KURPGEWEIT, LOIS JEAN KUYKENDALL, ROSE LA ROCCA, GILLIAN ROSE LEE, DONNA LEGLER, KRISTINA LEINS, ALETHEA LEONARD, BECKY LEANNE LINDSEY, LINDA LORRAINE LOCKHART, KRISTIE ANN LOVEN, TIMMIRA LOWERY, KELLY A. MAHONEY, DIANA MANLEY, HELYN MARANTO, DEBRA ANN MARION, DOTTIE MARLER, CYNTHIA RENEE MARSHALL, CHRISTOPHER J. MARTY, NANCY K. MASON, KAREN D. MATTHEWS, JENNIFER KILLGO as next friend of JANET MAYHEW, SLOANE MCCASTER, GINGER MCCRARY C/O PRESTON HEATH, CHARLENE MCDONALD, GINAE MCDONALD, KEVIN L. MCDONALD, EVELYN MCEWEN, JOHN FRANKLIN MCKINNEY, MICHAEL MCKINNEY, MELISSA MCRAY, LAURENTINA MEDINA, CHRISTOPHER MENCHACA, PRISCILLA J. MEREDITH, JUDY MILLER, DAISHEA ANDRETTE MITCHELL, PATTY MITCHELL, DENNIS MODDRELL, ELLA MAE MOODY, RENEE QUAY MOODY, STACEY MOORE as next friend of CAROLINE MOORE, SHERRY MORGAN, BRANDIE MUMFORD, MARVIN MUSGROVE, RUBY GAIL MUSICK, MARY JANE NANCE, PATRICIA O'CONNELL, JOHN OISTER, TERRY OLSEN, DARRELL J. O'NEAL, VICKIE WILSON OSBORN, CAROL PARKS, HELEN PARKS, GREG PASCHAL, D. G. PASSONS, REBEKAH PAYNE, THOMAS LEAMON PENNA, ANGIE PERRY, DONALD PICKETT, DAVID PINEIRO, BELIA M. PIZANA, LAURA POPE, SHIRLEY PRATER, JOANN PRESSLEY, MARY H. PREWITT, TERESA A. PRUITT, DAVID PRYOR, WENDY PRYOR, BRENT RANDALL, JENNIFER J. REED, BRENDA RENO, RONALD JAMES REYNOLDS, CHARLOTTE RICHARDSON, LINDA SUE ROBERTS, HEATHER COLLEEN RUOFF, CHARLES RUSHING, SUZANNE MARIE RUSHING, LANA RUTLEDGE, RODNEY EARL RYON, JAMES EDWARD SALAS, JO ANNE SCHROEDER, WYFRANCIS J. SCOTT, CINDY  SEABRIGHT, BARETT SEALS, DONNA

DARLENE SHULL, THOMAS SHULL, KAIRE SIMMONS, DA MEIKIA KETTER as next friend of RYDELL ISAIAH SIMMONS, MICHELLE SIMONS, DENISE SIMS, DOROTHY SIMS, VIRGINIA GAYLE SIMS, SHELIA SKINNER, BOBBIE SMITH, THADDEUS WALTER SMITH, DIANE NOEL SORENSON-SILVA, JOHN C. STANLEY, JENNIFER STEVENS, REGINA STOCKTON, JOSHUA ARIC STODOLA, ALLISON STOKES, MICHAEL STRAIT, ROBERT STROUD, THOMAS TAYLOR, HEATHER JANELL TEAGUE, KRISTYNA TEAGUE, SHEILA TEAGUE, DONALD THOMAS, HANNAH THOMPSON, JANICE THORNTON, BOBBY A. TODD, HYRICE BENN TOMLIN, DONNIE TUGGLE, LACHELLE TURNER, AMY VALDEZ, LARHONDA VEAL, HEATHER VIGIL, WILLIAM ERWIN VINCENT, CYNTHIA VOSS, MARGIE WADE, MICHAELA JEAN WALKER-HETTINGER, MICHAEL L. WALSH, CARL LEE WARE, ROSE MARY WARREN, DANELLA WARRICK, MICHAEL WHEELER, KRIS WHITE, ROBERT WARD WHITE, ROSE WHITE, CHARLOTTE WHITTEN, CYNTHIA WILSON, MARY WOOD-SCHORG, DAVID WOOTEN, BRIAN RONALD YOX, and EDWARD DALE ZAIDLE, are residents of Dallas County, Texas, and/or have been injured arising out of the same transaction or occurrence that is the subject of the claims between Plaintiff **DOROTHY BANKS** and Defendants. Plaintiffs' claims are related in time, space, origin, motivation and, when taken together, form a convenient unit for trial purposes. The claims of these Plaintiffs are logically related to the claims of Plaintiff **DOROTHY BANKS** against these Defendants. The claims of these Plaintiffs are brought against these Defendants in the same capacity as those brought by Plaintiff **DOROTHY BANKS**. Joint trial of the claims of Plaintiffs will prevent manifest injustice and will not prejudice the rights of the parties.

4.      Defendant, **BRISTOL-MYERS SQUIBB COMPANY** ("BMS") is a corporation organized and existing under the laws of the State of Delaware. BMS is authorized to do business in and does business in the State of Texas. BMS may be served with citation and petition by serving its registered agent, CT Corp. System, at 350 North St. Paul Street, Dallas, Texas 75201.

5.      Defendant, **JOHN DOE NO. 1**, is an individual residing in Dallas, Dallas County, Texas. **JOHN DOE NO. 1** has his/her principal place of business in Dallas, Dallas County, Texas.

6.      Defendant, **JOHN DOE NO. 2**, is an individual residing in Dallas, Dallas County, Texas. **JOHN DOE NO. 2** has his/her principal place of business in Dallas, Dallas County, Texas.

7.      Defendant, **JOHN DOE NO. 3**, is an individual residing in Dallas, Dallas County, Texas. **JOHN DOE NO. 3** has his/her principal place of business in Dallas, Dallas County, Texas.

8.      Defendant, **JOHN DOE NO. 4**, is an individual residing in Dallas, Dallas County, Texas. **JOHN DOE NO. 4** has his/her principal place of business in Dallas, Dallas County, Texas.

9.      Defendant, **JOHN DOE NO. 5**, is an individual residing in Dallas, Dallas County, Texas. **JOHN DOE NO. 5** has his/her principal place of business in Dallas, Dallas County, Texas.

### III.
### JURISDICTION AND VENUE

10.      This Court has jurisdiction over each Defendant because each Defendant is doing business in Texas, has committed a tort, in whole or in part in Texas, is a resident and citizen of Texas and/or has continuing minimum contacts with the State of Texas.  Each Defendant is amenable to service of process by a Texas court.  This Court also has jurisdiction over the amount in controversy because the damages are within the jurisdictional limits of this Court.

11.      Pursuant to § 15.002 of the Texas Civil Practice & Remedies Code, venue is proper because Dallas County is: (i) the county in which all or a substantial part of the events or omissions giving rise to the claims occurred; (ii) the county of Defendant's residence at the time the cause of action accrued; (iii) the county of Defendant's principal office in this state; or (iv) the county in which the plaintiff resided at the time of the accrual of the cause of action.  In addition, according to § 15.003 of the Texas Civil Practice & Remedies Code, Plaintiffs' presence in this suit is proper under the Texas Rules of Civil Procedure and does not unfairly prejudice another party.  There is an essential need to have Plaintiffs' claims tried in



Dallas County, Texas, and Dallas County is a fair and convenient venue. Further, venue is proper in Dallas County because Defendant BMS and John Doe Nos. 1-5 were doing business in Dallas County by distributing, selling, and/or marketing their products in Dallas County. Also, this is a suit for breach of warranty by a manufacturer of consumer goods, and Plaintiffs resided in Dallas County when the cause of action accrued.

12.     There is no basis for federal court jurisdiction over this matter. Plaintiffs have not pleaded nor do Plaintiffs intend to plead any claim cognizable under federal law or any federal code, regulation, rule, statute, or otherwise. Moreover, there is no diversity of citizenship between Plaintiffs and all Defendants. Consequently, there is no legitimate basis for diversity jurisdiction and/or removal in this case.

IV.
FACTUAL BACKGROUND

A.     BMS

13.     BMS is one of the largest pharmaceutical companies in the world, and it manufactures, markets, and distributes Serzone throughout the world. BMS had annual global sales in 2001 of over $19 billion, and BMS' sales of Serzone in 2001 exceeded $400 million. Indeed, BMS anticipated that Serzone would be a blockbuster product with enormous financial benefits. At all material times, BMS either solely or by the use of others, researched, designed, created, tested, manufactured, packaged, labeled, distributed, marketed, supplied, sold, advertised, warned and otherwise disseminated the prescription drug Serzone. BMS was at all relevant times in control of the design, testing, assembly, packaging, labeling, advertising, manufacturing, marketing, and sales of Serzone. BMS erroneously advertised Serzone as safe and effective for the treatment of depression. Plaintiffs were each prescribed and ingested Serzone for the treatment and/or management of depression, and each has suffered injuries and damage as a result.

**B.  Defendant John Doe Nos. 1-5**

14.  Defendant John Doe Nos. 1-5 marketed, promoted and distributed Serzone throughout the market in and around Dallas, Dallas County, Texas. Defendant John Doe Nos. 1-5 met with, instructed, and counseled Plaintiffs' physicians regarding Serzone. Defendant John Doe Nos. 1-5 visited the offices of Plaintiffs' physicians, on behalf of Defendant BMS, to encourage Plaintiffs' physicians to provide samples and prescriptions of Serzone to Plaintiffs. Defendant John Doe Nos. 1-5 provided entertainment, meals, conferences, and materials to Plaintiffs' physicians, on behalf of Defendant BMS, to ensure that Plaintiffs' physicians were familiar with Defendant BMS' design, testing, assembly, packaging, labeling, advertising, manufacturing, marketing, and sales of Serzone. Defendant John Doe Nos. 1-5 erroneously advertised Serzone to Plaintiffs' physicians and Plaintiffs as safe and effective for the treatment of depression. Defendant John Doe Nos. 1-5 directly participated in and/or authorized the tortuous activity complained of herein. Defendant John Doe Nos. 1-5 are directly involved in the stream of commerce of distributing, marketing and promoting Serzone for use by Plaintiffs. Plaintiffs were each prescribed and ingested Serzone for the treatment and/or management of depression, and each has suffered injuries and damage as a result.

**C.  Serzone**

15.  Serzone is a drug prescribed for the treatment of depression. Serzone's generic name is Nefazodone Hydrochloride. Serzone is designed to control depression by blocking postsynaptic serotonin type-2 receptors and inhibiting presynaptic serotonin reuptake. Serzone is also designed to block norepinephrine reuptake. While Serzone's structure and composition are unique, it is similar to other drugs such as Prozac, Paxil, and Zoloft, which are collectively referred to as selective serotonin reuptake inhibitors (SSRI's). Serzone is available in five different strength dosages: 50 mg, 100 mg, 150 mg, 200 mg, and 250 mg. The usual recommended starting dose is 50 mg, two times a day.

**D.    BMS' Pre-approval Serzone Studies**

16.    Prior to approval by the Food and Drug Administration ("FDA"), BMS conducted eight pre-clinical studies to test Serzone's effectiveness and safety.  Only two of these studies supported Serzone's effectiveness for the treatment of depression.  Moreover, 16% of the 3,496 participants in BMS' pre-marketing Serzone trials had to drop out of the trials because of adverse experiences, including abnormal liver function tests, drowsiness, nausea, dizziness, constipation, abnormal vision, and asthenia.  5.1% of the participants developed low blood pressure.  Despite the known potential for abnormal liver function tests, BMS failed to include any warning of liver toxicity in its initial Serzone literature, and BMS failed to warn that patients with pre-existing liver injuries should not be prescribed Serzone.  Additional studies conducted by BMS after the Serzone's introduction to the market have similarly failed to support Serzone's effectiveness for the treatment of depression.

**E.    FDA and Serzone Labeling**

17.    Prior to submitting its New Drug Application ("NDA") for Serzone, BMS was required to file an Investigational New Drug Application ("IND") pursuant to which it conducted clinical trials to support its Serzone NDA.  During the IND phase, BMS tested Serzone for safety and efficacy.  On November 7, 1994, the FDA granted BMS's NDA for Serzone.  In the NDA, BMS requested permission to manufacture and market Serzone in 50 mg, 100 mg, 150 mg, 200 mg, 250 mg, and 300 mg strength pills.  An approval letter from the FDA indicated that the FDA was prepared to approve the application upon the satisfaction of conditions specified in the approval letter.  On December 22, 1994, the FDA approved Serzone for use in the United States for the treatment of depression.  The FDA approval included each of the six dosage strengths BMS requested.  As stated above, BMS' initial warnings for Serzone did not include information on the drug's potential effect on the patient's liver.

18.    In January 1999, the FDA forced BMS to change Serzone's safety warnings to include a statement that post-introduction clinical experiences with Serzone showed "rare reports of liver necrosis



and liver failure, in some cases leading to liver transplantation and/or death." On January 23, 2001, the FDA once again forced BMS to change the safety warning on Serzone to exclude the word "rare" from the statement added in January of 1999 so that the warning read, "...reports of liver necrosis and liver failure, in some cases leading to liver transplantation and/or death."

19.    By June of 2001, 109 cases of hepatic events with a temporal relationship to Serzone therapy were reported to either the FDA or BMS. Of these 109 cases, 23 involved liver failure, of which 16 led to transplantation and/or death. One of these cases of liver failure occurred in 1996 and resulted in the patient receiving a liver transplant. Three months after the transplant, the patient died. Another case of liver failure occurred in 1997 and also resulted in the patient receiving a liver transplant. By November 2003, the number of incidents of liver failure associated with Serzone had increased to 55, 20 of which resulted in death.

20.    Because of Serzone's apparent liver toxicity, on December 4, 2001, the FDA forced BMS to add a "Black Box" warning on Serzone's safety label. A "Black Box" warning is the strongest form of notice FDA may require a manufacturer to give to physicians and patients. The change was not made available to prescribing physicians and patients who were currently on, or had been on, Serzone until January 8, 2002. The "Black Box" warning informed the public, for the first time, that at least 1 in 250,000 to 300,000 people who took Serzone for at least one year would either die or require liver transplantation, representing a rate of about 3 to 4 times the estimated rate of liver failure for people not taking Serzone. The FDA also sent a letter to physicians informing them of the dangers of Serzone.

21.    The "Black Box" warning states that the actual number of serious adverse liver events is likely much higher than the number reported because of "underreporting." Indeed, BMS' recent "Black Box" warning states that the risk of liver failure could be "considerably greater" than 3-4 times the normal rate. Since reporting is voluntary, the actual frequency of adverse reactions may be 10 times greater than is actually reported. Underreporting has even been estimated to be as high as 99% in some instances, in



which case the actual frequency of liver failure in patients taking Serzone could be 1 in 2,500 to 3,000 patients who take Serzone for one year.

**F.      Health Canada Warning**

22.      As a result of the high incidence of serious adverse liver events, on June 21, 2001, Health Canada (the Canadian equivalent of the FDA) required a letter to be sent to Canadian health care providers to inform them of the serious adverse liver events associated with Serzone.  On June 27, 2001, the Canadian Medical Association followed this letter with a bulletin warning of severe hepatic injury, liver failure, and death associated with the use of Serzone.

**G.      Serzone Pulled from the Netherlands**

23.      In December of 2002, BMS sent a letter to the Dutch Medicines Evaluation Board ("DMEB") advising that BMS would stop selling Serzone, its "blockbuster" anti-depressant, in the Netherlands in April of 2003.  BMS provided its notification following the DMEB's review of BMS' risk/benefit profile.

**H.      Serzone Pulled from Sweden**

24.      Also in 2002, BMS advised that it would stop selling Serzone in Sweden.

**I.      Serzone Pulled from Europe**

25.      In January of 2003, BMS advised that it would stop selling Serzone, known in Europe as Dutonin, in all European countries where it is marketed.  UK regulators stated that as of December, 2002, there had been 26 reports of liver failure, 10 cases of liver transplantation, and 13 deaths associated with Serzone.

**J.      Serzone Pulled from Canada**

26.      In October of 2003, Canada announced that it would remove Serzone from the Canadian market effective November 27, 2003.

K.   **Public Citizen, Inc. Files Lawsuit Seeking Ban on Nefazodone**

27.     On March 15, 2004, Public Citizen, Inc. filed suit against the FDA, requesting the court to order the agency to act on petitions filed by Public Citizen, Inc. with the FDA in March 2003 and October 2003 requesting a ban on nefazodone, the generic name for Serzone.

L.   **Serzone Pulled from the United States**

28.     On May 19, 2004, BMS advised that it would stop selling and manufacturing Serzone in the United States effective June 14, 2004.

M.   **Serzone's Side Effects**

29.     As noted above, Serzone has been linked to serious liver complications, including liver failure, liver transplants, and death related to liver failure.  Symptoms of liver complications include jaundice (yellowing of the skin or the whites of the eyes), unusually dark urine, loss of appetite that lasts several days or longer, severe nausea, and stomach pain.  Each of these symptoms has been associated with Serzone.

30.     Without limitation, other side effects associated with Serzone are allergic reactions (including difficulty breathing, closing of the throat, swelling of the lips, tongue, or face, and hives), fainting, and prolonged, painful, or inappropriate erections (which could lead to a serious condition requiring surgery).   Less serious side effects associated with Serzone include dizziness, lightheadedness, drowsiness, upset stomach, dry mouth, constipation, and blurred or abnormal vision.

31.     Some patients who have taken Serzone also experience traumatic withdrawal effects when they miss a dose, stop taking the drug, or even when they reduce their dosage by small amounts. These withdrawal symptoms include raised blood pressure, broken blood vessels in the eyes, headaches, nausea, flu-like symptoms, and a prickly feeling in the arms.  Some of the patients who experience these withdrawal symptoms are Plaintiffs herein.

32.     Despite BMS' knowledge of the high rate of liver complications and/or death, BMS has not, at any time during its marketing of Serzone, recommended that patients using the drug be monitored for liver injury.

**N.     Plaintiffs' Ingestion of Serzone**

33.     Plaintiffs have each been prescribed Serzone and have ingested Serzone. Plaintiffs have each suffered adverse effects from their Serzone ingestion, ranging from liver damage to other less serious effects.

## V.
## DISCOVERY RULE, FRAUDULENT CONCEALMENT, AND TOLLING OF LIMITATIONS

34.     All applicable limitations periods have been tolled by Defendants' knowing and active concealment and denial of the facts as alleged herein. Plaintiffs have been kept in ignorance of vital information essential to the pursuit of these claims without any fault or lack of diligence on their part. BMS and Defendant John Doe Nos. 1-5 are and were under a continuing duty to disclose the true character, quality, and nature of Serzone to all Plaintiffs, and Defendants are estopped from relying on a limitations defense because of their concealment of the true character, quality, and nature of Serzone. Additionally, the discovery rule applies to limitations in this case. Finally, all limitations periods are tolled because Plaintiffs are potential class members in any of a number of national class actions currently pending involving Serzone.

## VI.
## CAUSES OF ACTION

**A.     Negligence and Gross Negligence**

35.     Plaintiffs re-allege and incorporate herein by reference paragraphs 1 through 34 and further allege as follows.

36.     BMS and John Doe Nos. 1-5 negligently designed, created, tested, manufactured, packaged, labeled, marketed, sold, distributed, supplied, advertised, provided warnings, and otherwise disseminated Serzone.

37.     When BMS and John Doe Nos. 1-5 placed Serzone in the stream of commerce, they negligently failed to include with Serzone adequate and appropriate warnings regarding the increased risk of adverse side effects caused by ingesting Serzone. Furthermore, the warnings included with Serzone failed to accurately reflect the risks, incidence, symptoms, scope, and severity of the adverse side effects.

38.     BMS and John Doe Nos. 1-5 negligently failed to adequately test Serzone regarding its safety for consumers. Adequate testing would have revealed Serzone's serious risk of adverse side effects and would have permitted BMS and John Doe Nos. 1-5 to include adequate and appropriate warnings to consumers, prescribing physicians, and the medical community.

39.     BMS and John Doe Nos. 1-5 had a duty to consumers of Serzone, prescribing physicians, and the medical community to exercise reasonable care in the design, creation, testing, manufacture, packaging, labeling, marketing, selling, distribution, and supply of Serzone, including the duty to ensure that Serzone did not cause consumers to suffer from unreasonable, dangerous side effects.

40.     BMS and John Doe Nos. 1-5 breached their duty to consumers of Serzone, prescribing physicians, and the medical community regarding the design, creation, testing, manufacture, packaging, labeling, marketing, selling, distribution, and supply of Serzone in that they:

    (i)     Failed to include in the packaging of Serzone appropriate and complete warnings regarding all possible side effects associated with the use of Serzone;

    (ii)    Failed to conduct adequate pre-clinical and clinical testing, and post-marketing surveillance, to determine the safety of Serzone;

    (iii)   Failed to adequately train and instruct health care providers regarding the proper and appropriate use of Serzone;

    (iv)   Failed to warn consumers of Serzone about the following:



(a)     The need for comprehensive regular monitoring to ensure the early discovery of potentially life-threatening side effects of Serzone;

(b)     The possibility of severe liver conditions, including the risk of liver failure, a need for transplantation, and death;

(c)     The possibility of side effects becoming protracted, debilitating, difficult, and painful, requiring multiple visits to the doctor and/or hospital; and

(d)     The need for medical monitoring that is different and more extensive than patients seeking treatment for depression normally require;

(v)     Failed to warn that the risks associated with Serzone were more extensive than risks associated with other pharmacotherapy associated with depression;

(vi)    Marketed Serzone despite knowing that the risks of Serzone were so high, and the benefits so speculative, that no reasonable pharmaceutical company exercising due care would have done so;

(vii)   Recklessly, falsely, and deceptively represented, or knowingly concealed, suppressed, or omitted, material facts regarding the safety and efficacy of Serzone to the FDA and/or the FDA's advisory committee to the extent that, had the FDA and/or the FDA's advisory committee members known such facts, Serzone would not have been approved for consumption and no health care provider would have had the opportunity to prescribe Serzone;

(viii)  Despite possessing knowledge of growing public acceptance of their misinformation and misrepresentations, they remained silent as to the true nature of Serzone because the prospect of "blockbuster" profits outweighed health and safety issues;

(ix)    Failed to comply with their post-manufacturing duty to warn, which arose when they knew, or with reasonable care should have known, that their drug was being prescribed without warnings of the true risk of side effects; and

(x)     Were otherwise careless, negligent, grossly negligent, reckless, and acted with willful and wanton disregard for Plaintiffs' rights.

41.     BMS and John Doe Nos. 1-5 continued to market Serzone to consumers, despite the fact that BMS and John Doe Nos. 1-5 knew, or should have known, that Serzone caused unreasonable and dangerous side effects when there were safer alternative methods and treatments available.

42.     BMS and John Doe Nos. 1-5 knew, or should have known, that consumers such as Plaintiffs would suffer injuries as a result of BMS' failure to exercise ordinary care. In other words, Plaintiffs' injuries were foreseeable to BMS and John Doe Nos. 1-5.

43.     BMS and John Doe Nos. 1-5's actions constitute knowing omission, suppression, and concealment of material facts, made with the intent that others rely upon such omissions, suppression, and concealment in connection with the marketing of Serzone.

44.     Plaintiffs' injuries were directly and proximately caused by BMS and John Doe Nos. 1-5's breach of their duties owed to consumers, prescribing physicians, and the medical community.

45.     BMS and John Doe Nos. 1-5's conduct was unlawful and negligent; used or employed unconscionable commercial and business practices; constituted fraud, deception, false pretenses, false promises, and misrepresentations; and evidenced knowing concealment, suppression, and omission of material facts with the intent that consumers, prescribing physicians, and the medical community rely upon such conduct in the creation, testing, manufacture, marketing, selling, distribution, and supply of Serzone.

46.     As a direct and proximate cause of BMS and John Doe Nos. 1-5's negligence, Plaintiffs ingested Serzone and:

(i)     Suffered serious and grievous personal injuries and harm;

(ii)    Suffered economic loss, including loss of earnings and earnings capacity; and

(iii)   Necessitated the expenditure of fair and reasonable expenses for necessary health care, attention, and services, and incurred incidental and related expenses.

47.     BMS and John Doe Nos. 1-5's conduct evidences a flagrant disregard for human life so as to warrant the imposition of punitive and/or exemplary damages.

**B.      Strict Products Liability – Failure to Warn**

48.     Plaintiffs re-allege and incorporate herein by reference paragraphs 1 through 47 and further allege as follows.

49.     Serzone, as manufactured and/or supplied by BMS and John Doe Nos. 1-5, was not accompanied by sufficient and proper warnings to consumers, prescribing physicians, or the medical community regarding all possible adverse side effects, or the extent, scope, symptoms, duration, severity or degree of such adverse side effects associated with the use of Serzone.

50.     BMS and John Doe Nos. 1-5's failure to adequately test Serzone resulted in Serzone's distribution without full and proper warnings that accurately and completely reflect the symptoms, scope, and severity of potentially serious adverse side effects.

51.     The Serzone designed, created, tested, manufactured, packaged, labeled, marketed, sold, distributed, supplied, advertised, provided warnings, and otherwise disseminated by BMS and John Doe Nos. 1-5 was defective due to inadequate initial and/or post-marketing warnings and instructions because, after BMS and John Doe Nos. 1-5 knew or should have known of the risk of serious injury and death from Serzone, BMS and John Doe Nos. 1-5 failed to provide adequate warnings and continued to aggressively market and promote Serzone to consumers, prescribing physicians, and the medical community.

52.     As a direct and proximate result of the defective condition of Serzone as designed, created, tested, manufactured, packaged, labeled, provided warnings, marketed, sold, distributed, supplied, advertised, and otherwise disseminated by BMS and John Doe Nos. 1-5, and as a result of the negligence, carelessness, and other wrongdoing and actions by BMS and John Doe Nos. 1-5, Plaintiffs:

(i)     Suffered serious and grievous personal injuries and harm;

(ii)    Suffered economic loss, including loss of earnings and earnings capacity; and

(iii)   Necessitated the expenditure of fair and reasonable expenses for necessary health care, attention, and services, and incurred incidental and related expenses.

C.     **Strict Products Liability – Manufacturing/Design Defect**

53.     Plaintiffs re-allege and incorporate by reference herein paragraphs 1 through 52 and further allege as follows.

54.     BMS and John Doe Nos. 1-5 are liable to Plaintiffs under § 402A of the Restatement of Torts (3d).

55.     The Serzone designed, created, tested, manufactured, packaged, labeled, marketed, sold, distributed, supplied, advertised, provided warnings, and otherwise disseminated by BMS and John Doe Nos. 1-5 was defective in design or formulation in that, when it left the hands of BMS and John Doe Nos. 1-5, the foreseeable risks exceeded the benefits associated with the design or formulation.

56.     In the alternative, the Serzone designed, created, tested, manufactured, packaged, labeled, marketed, sold, distributed, supplied, advertised, provided warnings, and otherwise disseminated by BMS and John Doe Nos. 1-5 was defective in design or formulation in that, when it left the hands of BMS and John Doe Nos. 1-5, it was unreasonably dangerous, more dangerous than an ordinary consumer would expect, and more dangerous than other medications used for similar purposes without concomitant accurate information and warnings accompanying the product for physicians and the medical community to rely upon in their treatment and administration to patients like Plaintiffs.

57.     Additionally, the Serzone designed, created, tested, manufactured, packaged, labeled, marketed, sold, distributed, supplied, advertised, provided warnings, and otherwise disseminated by BMS and John Doe Nos. 1-5 was defective due to inadequate pre-clinical trials, inadequate clinical trials, inadequate testing, inadequate study, and inadequate reporting regarding results of same.

58.     Additionally, the Serzone designed, created, tested, manufactured, packaged, labeled, marketed, sold, distributed, supplied, advertised, provided warnings, and otherwise disseminated by BMS and John Doe Nos. 1-5 was defective due to inadequate post-marketing warning and instruction because, after BMS and John Doe Nos. 1-5 knew or should have known of the risk of serious injury and death from Serzone, BMS and John Doe Nos. 1-5 failed to provide adequate warnings and continued to aggressively market and promote Serzone to consumers, prescribing physicians, and the medical community.

59. As a direct and proximate result of the defective condition of Serzone as designed, created, tested, manufactured, packaged, labeled, marketed, sold, distributed, supplied, advertised, provided warnings, and otherwise disseminated by BMS and John Doe Nos. 1-5, and as a result of the negligence, carelessness, and other wrongdoing and actions by BMS and John Doe Nos. 1-5, Plaintiffs:

(i) Suffered serious and grievous personal injuries and harm;

(ii) Suffered economic loss, including loss of earnings and earnings capacity; and

(iii) Necessitated the expenditure of fair and reasonable expenses for necessary health care, attention, and services, and incurred incidental and related expenses.

**D. Negligent Manufacture**

60. Plaintiffs re-allege and incorporate by reference herein paragraphs 1 through 59 and further allege as follows.

61. BMS and John Doe Nos. 1-5 knew or should have known that Serzone as designed, created, tested, manufactured, packaged, labeled, marketed, sold, distributed, supplied, advertised, provided warnings, and otherwise disseminated by BMS and John Doe Nos. 1-5 was defective in design or formulation in that when it left BMS and John Doe Nos. 1-5's hands the foreseeable risks exceeded the benefits associated with the design or formulation.

62. In the alternative, BMS and John Doe Nos. 1-5 knew or should have known that Serzone as designed, created, tested, manufactured, packaged, labeled, marketed, sold, distributed, supplied, advertised, provided warnings, and otherwise disseminated by BMS and John Doe Nos. 1-5 was defective in design or formulation when it left BMS and John Doe Nos. 1-5's hands in that it was unreasonably dangerous, more dangerous than an ordinary consumer would expect, and more dangerous than other drugs intended for similar use without concomitant accurate information and warnings accompanying Serzone for physicians and the medical community to rely upon in their treatment and administration of Serzone to consumers like Plaintiffs.

63.     BMS and John Doe Nos. 1-5 knew or should have known that Serzone as designed, created, tested, manufactured, packaged, labeled, marketed, sold, distributed, supplied, advertised, provided warnings, and otherwise disseminated by BMS and John Doe Nos. 1-5 was defective due to inadequate warnings, inadequate clinical trials, inadequate testing, inadequate study, and inadequate reporting.

64.     Additionally, BMS and John Doe Nos. 1-5 knew or should have known that the Serzone BMS and John Doe Nos. 1-5 designed, created, tested, manufactured, packaged, labeled, marketed, sold, distributed, supplied, advertised, provided warnings, and otherwise disseminated was defective due to inadequate post-marketing warning and instruction because, after BMS and John Doe Nos. 1-5 knew or should have known of the risk of serious injury and death from Serzone, BMS and John Doe Nos. 1-5 failed to provide adequate warnings and continued to aggressively market and promote Serzone to consumers, prescribing physicians, and the medical community.

65.     As a direct and proximate result of the defective condition of Serzone as designed, created, tested, manufactured, packaged, labeled, marketed, sold, distributed, supplied, advertised, provided warnings, and otherwise disseminated by BMS and John Doe Nos. 1-5, and as a result of the negligence, carelessness, and other wrongdoing and actions by BMS and John Doe Nos. 1-5, Plaintiffs:

      (i)     Suffered serious and grievous personal injuries and harm;

      (ii)    Suffered economic loss, including loss of earnings and earnings capacity; and

      (iii)   Necessitated the expenditure of fair and reasonable expenses for necessary health care, attention, and services, and incurred incidental and related expenses.

**E.     Negligent Misrepresentation and Fraud**

66.     Plaintiffs re-allege and incorporate by reference herein paragraphs 1 through 65 and further allege as follows.

67.     From the time Serzone was first manufactured, BMS and John Doe Nos. 1-5 made false representations as previously set forth in this petition to Plaintiffs, prescribing physicians, the medical community, and the general public, including but not limited to the misrepresentation that Serzone was safe, fit, and effective for human consumption. At all times mentioned herein, BMS and John Doe Nos. 1-5 conducted a sales and marketing campaign to promote the sale of Serzone and willfully deceived Plaintiffs, prescribing physicians, the medical community, and the general public regarding the health risks and consequences of using Serzone.

68.     BMS and John Doe Nos. 1-5 made the foregoing representations without any reasonable belief that they were true. Such representations were made directly by BMS and John Doe Nos. 1-5. These representations were also made in publications and other written materials directed to physicians, medical patients, and the general public with the intention of inducing reliance by way of the prescription, purchase, and consuming of Serzone.

69.     The foregoing representations by BMS and John Doe Nos. 1-5 are false in that Serzone is in fact not safe, fit, and effective for human consumption. Serzone usage is hazardous to health. Serzone has a propensity to cause injuries or death to users, including but not limited to the injuries sustained by Plaintiffs as a direct result of their consumption of Serzone.

70.     The foregoing representations by BMS and John Doe Nos. 1-5 were made with the intention of inducing reliance by way of the prescription, purchase, and consuming of Serzone.

71.     In reliance on BMS and John Doe Nos. 1-5's misrepresentations, Plaintiffs' physicians were induced to prescribe Serzone for Plaintiffs, and Plaintiffs were induced into consuming Serzone. If Plaintiffs and Plaintiffs' physicians had known of the true facts and the facts concealed by BMS and John Doe Nos. 1-5, Plaintiffs would not have taken Serzone. Plaintiffs' reliance upon BMS and John Doe Nos. 1-5's misrepresentations and fraud was justified because such misrepresentations were made and conducted by individuals and entities who were in a position to know the true facts.

72.    As a result of the foregoing misrepresentations by BMS and John Doe Nos. 1-5, Plaintiffs:

(i)     Suffered serious and grievous personal injuries and harm;

(ii)    Suffered economic loss, including loss of earnings and earnings capacity; and

(iii)   Necessitated the expenditure of fair and reasonable expenses for necessary health care, attention, and services, and incurred incidental and related expenses.

**F.    Breach of Implied Warranty**

73.    Plaintiffs re-allege and incorporate by reference herein paragraphs 1 through 72 and further allege as follows.

74.    At the time BMS and John Doe Nos. 1-5 designed, created, tested, manufactured, packaged, labeled, marketed, sold, distributed, supplied, advertised, provided warnings, and otherwise disseminated Serzone, BMS and John Doe Nos. 1-5 knew of the use for which Serzone was intended and impliedly warranted Serzone to be of merchantable quality and safe and fit for such use.

75.    BMS and John Doe Nos. 1-5 breached the implied warranty of merchantability because Serzone was not of merchantable quality and was not safe or fit for the purpose for which it was intended and because Serzone is unreasonably dangerous and unfit for the ordinary purpose for which it was intended.

76.    Pleading alternatively and without waiving the foregoing, Plaintiffs would show that BMS delegated to John Doe Nos. 1-5 the duty of instructing and warning the prescribing doctors of the risks and benefits of using Serzone.

77.    As a direct and proximate result of BMS' and John Doe Nos. 1-5's breach of implied warranties, Plaintiffs suffered injuries and damages including personal injury, harm and/or an increased risk of harm.

**G.    Breach of Express Warranty**

78.    Plaintiffs re-allege and incorporate by reference herein paragraphs 1 through 77 and further allege as follows.

79.    BMS and John Doe Nos. 1-5 expressly warranted that Serzone was safe and well-tolerated by patients studied.   In reliance on BMS and John Doe Nos. 1-5's express warranties, Plaintiffs purchased and consumed Serzone to obtain health benefits purportedly achieved by doing the same.

80.    Plaintiffs reasonably relied upon the skill, knowledge, and judgment of BMS and John Doe Nos. 1-5 as to whether Serzone was of merchantable quality and safe and fit for its intended use.   Serzone failed to conform to BMS and John Doe Nos. 1-5's express representations because Serzone is not safe and has a high incidence of serious side effects, including life-threatening side effects.

81.    As a direct and proximate result of the breach of said warranties, Plaintiffs suffered injuries, harm, and economic loss.

82.    BMS and John Doe Nos. 1-5 acted fraudulently, recklessly, intentionally, maliciously, and/or with reckless disregard for the rights and safety of Plaintiffs, entitling Plaintiffs to punitive or exemplary damages in amounts appropriate to punish BMS and John Doe Nos. 1-5.

83.    As a direct and proximate result of the defective condition of Serzone as designed, created, tested, manufactured, packaged, labeled, marketed, sold, distributed, supplied, advertised, provided warnings, and otherwise disseminated by BMS and John Doe Nos. 1-5, and as a direct and proximate result of BMS and John Doe Nos. 1-5's breach of express warranties and other wrongdoing and actions by BMS and John Doe Nos. 1-5, Plaintiffs:

(i)     Suffered serious and grievous personal injuries and harm;

(ii)     Suffered economic loss, including loss of earnings and earnings capacity; and

(iii)     Necessitated the expenditure of fair and reasonable expenses for necessary health care, attention, and services, and incurred incidental and related expenses.

**H.    Unjust Enrichment**

84.    Plaintiffs re-allege and incorporate by reference herein paragraphs 1 through 83 and further allege as follows.

85.    Plaintiffs paid for Serzone for the purpose of managing depression. BMS and John Doe Nos. 1-5 have benefited financially by accepting Plaintiffs' payments for Serzone. Plaintiffs did not receive a safe and effective anti-depressant drug for which they paid. It would be inequitable for BMS and John Doe Nos. 1-5 to keep the money Plaintiffs paid because Plaintiffs did not in fact receive a save and effective anti-depressant.

**I.    Violations of the DTPA**

86.    Plaintiffs re-allege and incorporate by reference herein paragraphs 1 through 85 and further allege as follows.

87.    Plaintiffs have consumer standing defined by Tex. Bus. & Com. Code Ann. § 17.45(4) because they are individuals who sought and acquired, by purchase, a good (namely, the drug Serzone) from BMS and John Doe Nos. 1-5.

88.    BMS and John Doe Nos. 1-5 have breached both express and implied warranties in their design, creation, testing, manufacturing, packaging, labeling, marketing, selling, distribution, supplying, advertisement, warnings, and dissemination of Serzone.

89.    BMS and John Doe Nos. 1-5 have also engaged in unconscionable actions in the course of their design, creation, testing, manufacturing, packaging, labeling, marketing, selling, distribution, supplying, advertisement, warnings, and dissemination of Serzone.

90.    BMS and John Doe Nos. 1-5 have also engaged in deceptive, false, and/or misleading acts or practices by:

(i)    representing that a good, Serzone, has characteristics which it does not have;

(ii)     representing that a good, Serzone, is of a particular quality, standard, or grade when it is of another;

(iii)    advertising a good, Serzone, with intent not to sell it as advertised; and

(iv)    failing to disclose information concerning goods or services which was known at the time of the transaction, with the intent to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed.

91.     Plaintiffs relied upon BMS and John Doe Nos. 1-5's deceptive, false, and/or misleading acts and practices to their detriment by purchasing and consuming Serzone.

92.     BMS and John Doe Nos. 1-5 committed the enumerated deceptive, false, and/or misleading acts and practices knowingly and intentionally. Due to BMS' and John Doe Nos. 1-5's deceptive, false, and/or misleading acts and practices, Plaintiffs have suffered economic harm in the way of money spent on purchasing Serzone and medical treatment for the side effects of taking Serzone. Additionally, Plaintiffs have suffered mental anguish as a result of BMS' and John Doe Nos. 1-5's deceptive, false, and/or misleading acts and practices.

93.     Because BMS and John Doe Nos. 1-5 committed deceptive, false, and/or misleading acts and practices intentionally, Plaintiffs are entitled to recover treble damages on both their economic damages and mental anguish damages.

94.     Furthermore, BMS and John Doe Nos. 1-5's violation of the DTPA entitles Plaintiffs to recover their reasonable and necessary attorneys' fees and costs in this action.

**J.    Medical Monitoring**

95.     Plaintiffs re-allege and incorporate by reference herein paragraphs 1 through 94 and further allege as follows.

96.     The foregoing wrongful and negligent acts, omissions, and conduct by BMS and John Doe Nos. 1-5 in the design, creation, testing, manufacturing, packaging, labeling, marketing, selling, distribution, supplying, advertisement, warnings, and dissemination of Serzone and the failure to warn of the defects of



Serzone constitute actionable negligence, as well as actionable conduct under the common law of strict products liability and breach of warranty.

97.     BMS' and John Doe Nos. 1-5's negligent and wrongful conduct proximately caused Plaintiffs to suffer and to continue to suffer in the future. Plaintiffs have taken Serzone for some period of time. They have therefore experienced current anxiety and emotional distress and also face the serious and increased risk of long term side effects causing severe pain, further emotional distress and mental suffering, and may incur additional medical expenses and require additional medical care. This increased risk makes periodic medical examinations reasonable and necessary.

98.     Early detection and diagnosis of the medical problems incident to these long-term side effects and damage caused by Serzone is clinically invaluable because such detection and diagnosis can prevent, reduce, and significantly delay resulting discomfort, suffering, and may prevent death.

99.     The injuries and irreparable threat of harm to Plaintiffs can only be mitigated by medical monitoring. Medical monitoring will also help study Serzone's long-term effects and gather and forward information to treating physicians concerning treatment of all conditions associated with the consumption of Serzone. Medical monitoring would improve prospects for cure, treatment, the prolonging of life, and the minimization of pain and disability.

100.     Monetary damages alone will not suffice to compensate Plaintiffs for the nature of the harm caused to them. Medical monitoring that notifies Plaintiffs and aids in correcting the harm cause by Serzone can prevent greater harm which may not occur immediately, and which may be preventable if proper research is conducted and the health risks are diagnosed and treated before they occur or become worse.

101.     Without medical monitoring, Plaintiffs might not receive prompt medical care, which could increase their prospects for improvement or cure, as well as reduce the severity of injury and minimize

disability and prolong life. As a result of BMS' and John Doe Nos. 1-5's wrongful conduct, BMS and John Doe Nos. 1-5 should pay for Plaintiffs' medical monitoring.

**K.    Concert of Action**

102.    Pleading in the alternative and without waiving foregoing, Plaintiffs would show that BMS and John Doe Nos. 1-5 had a common plan or design to commit the tortuous acts complained of herein, or that John Doe Nos. 1-5 otherwise actively took part in the tortuous acts of BMS complained of herein, or that John Doe Nos. 1-5 furthered the tortuous acts of BMS at the request of BMS or that John Doe Nos. 1-5 lent aid or encouragement to BMS or otherwise ratified or adopted the tortuous acts of BMS. Therefore, since John Doe Nos. 1-5 committed such conduct in concert with BMS, John Doe Nos. 1-5 are directly responsible and individually liable for their shared wrongdoing.

**L.    Punitive Damages**

103.    Plaintiffs re-allege and incorporate by reference herein paragraphs 1 through 102 and further allege as follows.

104.    BMS and John Doe Nos. 1-5 acted wantonly, maliciously, recklessly, fraudulently, intentionally, and/or with conscious indifference to the rights, safety, and welfare of Plaintiffs and are, therefore, liable to Plaintiffs for punitive and/or exemplary damages in accordance with Texas state law.

**M.    Attorneys' Fees**

105.    Plaintiffs re-allege and incorporate by reference herein paragraphs 1 through 104 and further allege as follows.

106.    Due to BMS' and John Doe Nos. 1-5's actions, Plaintiffs have had to employ attorneys to prosecute this action so that Plaintiffs may be adequately compensated for the injuries they sustained.

107.    By virtue of BMS' and John Doe Nos. 1-5's deceptive trade practices and pursuant to Texas law and its Rules of Civil Procedure, Plaintiffs are entitled to an award of their attorneys' fees and costs.

## VII.
## PRAYER

**WHEREFORE PREMISES CONSIDERED,** Plaintiffs pray that Defendants be cited to appear and that on final trial, Plaintiffs have the following:

1.    Judgment against Defendants for actual damages;

2.    Pre-judgment interest as provided by law;

3.    Post-judgment interest as provided by law;

4.    Punitive or exemplary damages as allowed by Texas law;

5.    The costs of a reasonable medical monitoring program for each plaintiff;

6.    Reasonable and necessary attorneys' fees;

7.    Costs of suit; and

8.    Such other and further relief to which Plaintiffs may be justly entitled.


Respectfully submitted,

**HAGANS, BOBB & BURDINE, P.C.**

By: _Fred Hagans_ _____

**FRED HAGANS**
SBOT: 08685500
**SCOTT BURDINE**
SBOT: 03368900
**PAULA JANACEK**
SBOT: 24002344
3200 Travis
4TH Floor
Houston, Texas 77006
Telephone:  (713) 222-2700
Facsimile:  (713) 547-4950

**BRACEWELL & GIULIANI LLP**

By: _Ralph McBride_

**RALPH MCBRIDE**
SBOT: 13332400
**PHILLIP L. SAMPSON, JR.**
SBOT:  00788344
**HEATH NOVOSAD**
SBOT: 24037199
711 Louisiana Street, Suite 2900
Houston, Texas  77002
Telephone:  (713) 221-1307
Facsimile:  (713) 221-2167


**GRADY, SCHNEIDER & NEWMAN, L.L.P.**

By: _Keith Grady_

**KEITH GRADY**
SBOT: 00786853
**PETER SCHNEIDER**
SBOT:  00791615
**MARCUS L. STEVENSON**
SBOT: 00794694
801 Congress Avenue
4TH Floor
Houston, Texas  77002
Telephone:  (713)228-2200
Facsimile:  (713)228-2210
**ATTORNEYS FOR PLAINTIFFS**

RECYCLED ⊕

BROAD SERIES
3P5-P1 W